## Archie H. Weber et al., Appellants, v. William Rupp, Jr., et al., Appellees.

### Gen. No. 7,734.

1. CORPORATIONS—*sufficiency of bill to rescind stock subscription.* In a suit to have the several stock subscriptions of complainants for the stock of a certain corporation declared void and annulled by reason of the failure of the defendants issuing the stock to comply with the provisions of the Securities Act, Cahill's Ill. St. ch. 32, ¶ 254 *et seq.,* and of false and fraudulent representations and concealments, an averment of fraud that it was represented to complainants that the additional stock was to be used by the corporation in expanding its business whereas it was used to pay old debts could not be made a proper ground for setting aside the sale of the stock purchased when there was no showing in the bill that the old debts were not bona fide and that the paying of them was not a proper or necessary part of the plan for the expansion of the business.

2. RESCISSION AND CANCELLATION—*insufficiency of allegations of fraud in bill to set aside stock sale.* In a suit by a number of complainants to have the sales of corporate stock made to them by promoters set aside on the ground of fraud where the only allegations concerning fraud which affected in common all of the purchasers are certain corporate transactions and business of the corporation, such allegations were not properly a part of the bill when the corporation was not a party to the suit.

3. EQUITY—*when bill to set aside sale of corporate stock for fraud is multifarious.* Where it distinctly appears from the averments of a bill to have the sale of corporate stock to complainants by defendants set aside and declared void that the purchases occurred at different times, between different individuals and were separate, independent and disconnected transactions, and it does not appear that any one of the complainants have any interest in or claim to the shares of stock acquired by any other, the bill must be considered multifarious.

4. RESCISSION AND CANCELLATION—*violation of Securities Act not grounds for setting aside stock sale where tender back impossible.* In a suit to have subscriptions to corporate stock set aside on the ground that defendants falsely represented that at the time the sales were made the corporation was licensed to make such sales under the Securities Act, Cahill's Ill. St. ch. 32, ¶ 254 *et seq.,* relief cannot be based upon such fact where it appears from the

bill that after such stock was received it was exchanged for stock issued after compliance with the law and that the latter stock was utilized for collecting dividends from the corporation, inasmuch as complainants were unable to tender back the stock as to which the alleged infirmity existed.

5. RESCISSION AND CANCELLATION—*misjoinder of party defendant.* Where it clearly appears from the averments of a bill praying to have certain sales of corporate stock declared void and annulled that a certain bank was in no way connected with the alleged fraudulent sales, such bank was improperly made a party defendant.

Appeal by plaintiffs from the Circuit Court of Adams county; the Hon. FRED G. WOLFE, Judge, presiding. Heard in this court at the April term, 1924. Affirmed. Opinion filed October 22, 1924.

ROLLA BABCOCK and WILLIAM SCHLAGENHAUF, for appellants.

O'HARA, O'HARA & O'HARA, JOHN F. GARNER, MARK PENICK and JOHN E. WALL, for appellees.

MR. JUSTICE NIEHAUS delivered the opinion of the court.

In this case, the appellants, Archie H. Weber and Mrs. A. H. Weber, and sixty other persons as complainants, filed a bill in equity against the appellees, William Rupp, Jr., Roscoe Townsend, Frank J. Penick, J. H. VandenBoom, Sr., J. H. VandenBoom, Jr., Illinois State Bank of Quincy, Robert Powell and William J. Singleton, alleging that by false representations and fraud practiced upon them they were induced to subscribe for and purchase certain shares of the capital stock of The Knittel Co., which is a corporation organized under the laws of the State, with its home office at Quincy, Illinois. The corporation was formed to effect a reorganization of the Joseph Knittel Show Case Co., and the Aer Sweep Co. The bill alleges that the appellants became subscribers for and purchasers of the stock of The Knittel Co.; and that The Knittel Co. at that time had not qualified

to sell such stock, which was common and preferred stock of said corporation, under the Illinois Securities Law [Cahill's Ill. St. ch. 32, ¶ 254 *et seq.*] commonly known as the "Blue Sky Law"; and that the appellees, J. H. VandenBoom, Sr., J. H. VandenBoom, Jr., Roscoe Townsend, Frank J. Penick and William Rupp, Jr., conspired and acted together in a certain common plan and scheme to sell the stock of. The Knittel Co. to the appellants without The Knittel Co. first having qualified under the Illinois Securities Law; and that in furtherance of the plan and scheme to sell The Knittel Co. stock to the appellants, the appellees named entered into a certain pretended sale of stock with Roscoe Townsend, who was a codirector with them of The Knittel Co., and vice president-treasurer thereof, under which pretended sale preferred stock of The Knittel Co., namely $200,000, par value of 7 per cent B preferred stock at par, less a discount of 8 per cent, and $350,000 par value of the common stock at par, less discount of 8 per cent, was transferred to Roscoe Townsend, who was a man of no financial means and questioned solvency; but that no certificates were ever issued to Townsend, and no stock was ever assigned by Townsend to the appellants. The bill also alleges that this pretended contract of sale of stock to Townsend by the appellees named was only a subterfuge and a mask to evade the provisions of the Illinois Securities Law; and was planned and concocted by the appellees mentioned for that purpose, and to escape liability for selling the stock in violation of the Act. And that The Knittel Co., Roscoe Townsend, J. H. VandenBoom, Sr., J. H. VandenBoom, Jr., Frank J. Penick and William Rupp, Jr., employed Robert Powell as agent to assist in the sale of the stock of The Knittel Co.; and that Roscoe Townsend and Robert Powell as agents of The Knittel Co. and as agents of J. H. VandenBoom, Sr., J. H. VandenBoom, Jr., Frank Penick and William

Weber v. Rupp, 235 Ill. App. 132.

Rupp, Jr., did in furtherance of the sale and offer
for sale, for and on behalf of The Knittel Co., and for
and on behalf of themselves, solicit the appellants,
and each of them, to purchase shares of stock in The
Knittel Co.; and that all checks and notes given in
payment of such stock were made payable to The
Knittel Co., and were received in payment of said
several purchasers of stock by The Knittel Co. and by
the said J. H. VandenBoom, Sr., J. H. VandenBoom,
Jr., Frank J. Penick, William Rupp, Jr., and Roscoe
Townsend, with full knowledge of the illegality of
such issue of said stock; and with full knowledge that
said stock was being offered and sold in violation of
the Securities Act; and that the appellants and each
of them were solicited by said Robert Powell and
Roscoe Townsend personally and as agents of The
Knittel Co., J. H. VandenBoom, Jr., J. H. Vanden-
Boom, Sr., William Rupp, Jr. and Frank J. Penick,
to purchase their respective shares of stock; and that
the appellants and each of them had confidence in the
business ability and integrity and honesty of each
of said appellees, which was one of the inducements
that led the appellants and each of them to buy stock;
and that the appellees mentioned falsely and fraudu-
lently represented to them and each of them that said
issue of stock was a legal issue; and that all the laws
of the State of Illinois were complied with, with ref-
erence to the issue, sale and offer for sale of said
stock; and that the said appellees had a right to offer
for sale and sell the same, and that said representa-
tions were made with the intent to cause the appel-
lants to buy the stock in question; and that the ap-
pellants and each of them believed that they and each
of them were purchasing original increased stock of
The Knittel Co., issued and sold in compliance with
the laws of the State of Illinois; and that upon said
belief and reliance the appellants and each of them
purchased and paid for said shares of stock; and that

the representations made were false and fraudulent, and known to be such by the appellees and each of them. The bill also avers that there were other false and fraudulent representations made to the appellants and each of them by the appellees mentioned to induce them to buy the stock, namely, that they falsely and fraudulently represented to the appellants and each of them that the stock of The Knittel Co. was being offered and sold for expansion purposes, for expanding and increasing the business of The Knittel Co.; and that they issued a certain prospectus of The Knittel Co. and delivered a copy thereof to the appellants, wherein it was represented that owing to the amount of business on file it was found necessary to increase the facilities for production; and that it was intended to do that from the proceeds of the sale of said issue of stock; and that the appellees also represented that The Knittel Co. had so much business in its factory and booked orders that it was necessary to expand its facilities to take care of such business, and that the company was in a financial prosperous condition; all of which representations it is alleged were made to induce the appellants and each of them to buy the stock of said corporation; and that your appellants relied upon said representations and each of them; when in truth and in fact The Knittel Co. had become heavily indebted to various persons and corporations in large sums; and that the Illinois State Bank of Quincy at the time was a heavy creditor of said Knittel Co. to an amount far in excess of that allowed by law for said bank to loan to any one individual or corporation, namely, $100,000; and that said issue of stock was not made for the purpose of expanding the business as aforesaid, and as represented to the complainants and each of them, but for the purpose of taking up and paying The Knittel Co.'s old debts, that The Knittel Co. could not liquidate otherwise. It is also averred in the bill that The

Knittel Co. kept its accounts with the Illinois State Bank of Quincy, and that the bank cashed the greater part of appellants' notes and checks given in payment of stock; and wrongfully applied the funds thereby received in payment of The Knittel Co.'s debts; and that upon notice from the bank, who acted as agent for The Knittel Co., the appellants exchanged their original certificates of stock purchased for other certificates of stock subsequently issued by The Knittel Co., and which were presumably issued after compliance with the Illinois Securities Law; but it is alleged in reference to this exchange of certificates of stock, through the agency of the bank, that the bank in effecting said exchange fraudulently concealed the fact that the certificates were exchanged for certificates of stock which had been sold in violation of law and contrary to the Illinois Securities Law. Concerning the purchases the bill avers that the appellant A. H. Weber purchased 10 shares of common stock and 10 shares of preferred stock on July 3, 1920, and that the appellant Mrs. A. H. Weber, on the same day, purchased 6 shares of common stock and 4 shares of preferred stock; that the appellant William Haas purchased 10 shares of common stock and 10 shares of preferred stock on May 27, 1920; that the appellant George Marzolf purchased 15 shares of common stock and 15 shares of preferred stock on June 23, 1920; that the appellant B. H. Poling purchased 8 shares of preferred stock and 8 shares of common stock on July 27, 1920; that the appellant Rosaline E. Behnke purchased 15 shares of preferred stock on July 8, 1920; that the appellant Fred Porth purchased 11 shares of preferred stock and 9 shares of common stock on June 16, 1920; that the appellant Albert Schmitz purchased 5 shares of common stock and 5 shares of preferred stock on June 1, 1920; that the appellant W. E. Krueger purchased 10 shares of common stock and 10 shares of preferred stock on June

2, 1920; that the appellant Farnum W. Whitcomb purchased 10 shares of common stock and 10 shares of preferred stock on July 1, 1920; that the appellant George Boegner purchased 10 shares of preferred stock on June 18, 1920; that the appellant W. C. Reinbold purchased 5 shares of preferred stock and 10 shares of common stock on June 18, 1920; that the appellant George Williams purchased 10 shares of common stock and 10 shares of preferred stock on July 6, 1920; that the appellant George Stutz purchased 10 shares of preferred stock on June 22, 1920; that the appellant John L. Stutz purchased 5 shares of preferred stock and 5 shares of common stock on June 10, 1920; that the appellant W. B. Kimball purchased 5 shares of common stock and 5 shares of preferred stock on June 10, 1920; that the appellant Edward J. Dachroth purchased 8 shares of common stock and 7 shares of preferred stock on June 1, 1920; that the appellant W. C. Roland purchased 5 shares of common stock on June 11, 1920; that the appellant Enoch H. Flemming purchased 50 shares of common stock on March 3, 1920; that the appellant Aldo L. Kemp purchased 10 shares of common stock and 10 shares of preferred stock on March 3, 1920; that the appellant George B. Shinkle purchased 10 shares of common stock and 10 shares of preferred stock on May 1, 1920; that the appellant Homer H. Williams purchased 10 shares of common stock and 10 shares of preferred stock on May 21, 1920; that the appellant William Yager purchased 5 shares of common stock and 5 shares of preferred stock on June 9, 1920; that the appellant Leo L. Helfrich purchased 5 shares of common stock and 5 shares of preferred stock on May 5, 1920; that the appellant J. G. Young purchased 10 shares of common stock and 10 shares of preferred stock on July 6, 1920; that the appellant Henry A. Tausch purchased 5 shares of common stock and 5 shares of preferred stock on June 1, 1920; that

the appellant Arthur A. Lefler purchased 5 shares of
common stock and 5 shares of preferred stock on May
26, 1920; that the appellant J. Harver Norris pur-
chased 10 shares of common stock and 10 shares of
preferred stock on May 1, 1920; that the appellant
Lota D. Poling purchased 2 shares of common stock
and 2 shares of preferred stock on July 27, 1920;
that the appellant Clestia Nicholson purchased 5
shares of preferred stock on March 25, 1920; that
the appellant Henry B. Nash purchased 10 shares
of preferred stock and 10 shares of common stock
on June 10, 1920; that the appellant Henry B. Whit-
ford purchased 25 shares of common stock and 25
shares of preferred stock on May 29, 1920; that the
appellant John W. Bellew purchased 10 shares of
common stock and 10 shares of preferred stock on
May 1, 1920; that the appellant D. W. Whitford pur-
chased 25 shares of common stock and 25 shares of
preferred stock on April 15, 1920; that the appellant
Anna F. Starman purchased 10 shares of common
stock and 10 shares of preferred stock on March 23,
1920; that the appellant W. E. Neal purchased 4
shares of preferred stock on April 7, 1920; that the
appellant Walter H. Baldwin purchased 10 shares of
common stock and 10 shares of preferred stock on
February 24, 1920; that the appellant Lorenzo D.
Nichols purchased 10 shares of common stock and 10
shares of preferred stock on March 15, 1920; that
the appellant Wesley Clair purchased 10 shares of
common stock and 10 shares of preferred stock on
February 23, 1920; that the appellant O. D. Bray
purchased 5 shares of preferred stock on April 5,
1920; that the appellant Mary C. Bray purchased 5
shares of common stock and 5 shares of preferred
stock on April 10, 1920; that the appellant Joel M.
Dickersman purchased 5 shares of common stock and
5 shares of preferred stock on April 1, 1920; that
the appellant J. W. Williams purchased 10 shares of

common stock and 10 shares of preferred stock on April 21, 1920; that the appellant Henry K. Francis purchased 25 shares of common stock and 25 shares of preferred stock on May 26, 1920; that the appellant W. A. Hill purchased 10 shares of common stock and 10 shares of preferred stock on April 3, 1920; and purchased 10 shares of common stock and 10 shares of preferred stock on May 11, 1920; that the appellant Mary E. Hill purchased 8 shares of common stock and 8 shares of preferred stock on April 3, 1920; that the appellant R. N. Stacy purchased 10 shares of common stock and 10 shares of preferred stock on April 1, 1920; that the appellant Mabel Stacy purchased 2 shares of common stock on April 1, 1920; that the appellant John M. Francis purchased 25 shares of common stock and 25 shares of preferred stock on March 16, 1920; that the appellant Henry Farrell purchased 10 shares of common stock and 10 shares of preferred stock on February 18, 1920; that the appellant Jennie Westfall purchased 5 shares of common stock and 5 shares of preferred stock on August 23, 1920; that the appellants A. J. Tittle and Elnor Tittle purchased 20 shares of common stock and 20 shares of preferred stock on March 22, 1920; that the appellant George P. Shupe purchased 10 shares of common stock and 10 shares of preferred stock on February 23, 1920; that the appellant Fred D. Shupe purchased 10 shares of common stock and 10 shares of preferred stock on March 21, 1920; that the appellant Charles C. Shupe purchased 5 shares of common stock and 5 shares of preferred stock on April 1, 1920; that the appellant Arthur L. Lefler purchased 5 shares of common stock and 5 shares of preferred stock on July 7, 1920; that the appellant George W. Fletcher purchased 10 shares of common stock and 10 shares of preferred stock on March 9, 1920; and that he purchased 25 shares of common stock and 25 shares of preferred stock on March 22,

1920; that the appellant Vernon R. McKay purchased 10 shares of common stock and 10 shares of preferred stock on May 17, 1920; that the appellant James Hardy purchased 10 shares of common stock and 10 shares of preferred stock on March 9, 1920; that the appellant J. W. Kuhlman purchased 10 shares of common stock and 10 shares of preferred stock on April 20, 1920; that S. H. Ferris purchased 30 shares of preferred stock and 30 shares of common stock on April 7, 1920; and that since said purchase, said S. H. Ferris has deceased and that Helen B. Ferris is executrix of his estate. The bill also avers that The Knittel Co. is a bankrupt, and that proceedings of bankruptcy involving the company are now pending in the United States District Court for the Southern District of Illinois. The prayer for relief in the bill is as follows: That the several stock subscriptions be declared void and annulled by reason of the failure of the defendants issuing said stock to comply with the provisions of the Securities Act, and by reason of false and fraudulent representations and concealments aforesaid, and by reason of the fact that the stock was illegally issued, and that the defendants may be held jointly and severally liable to repay to your orators and each of them several sums of money paid for their stock, together with a reasonable attorney's fee, to be added to such amount, and that a reasonable attorney's fee would be 25 per cent of the several purchases of appellants. The bill contains a number of other general averments, which have no direct connection with the different and specific sales of stock to appellants and concern matters of business, and corporate transactions and proceedings of The Knittel Co., which is not a party to the suit; and it is deemed unnecessary therefore to point them out specifically for the purpose of this opinion.

A separate general and special demurrer was filed by each of the appellees respectively to the bill, and was sustained by the court, and the bill thereupon

dismissed for want of equity. This appeal is prosecuted from the order sustaining the demurrer and dismissing the bill.

In addition to the averments concerning the corporate proceedings of The Knittel Co., the bill contains averments concerning business transactions of The Knittel Co. with the State Bank of Quincy; also concerning transactions which each of the appellants had separately, in reference to the exchange of the stock purchased, for other stock issued by The Knittel Co. All these transactions are designated as fraudulent, but no facts from which fraud could be reasonably inferred in connection therewith. The bill also contains a number of other averments which have no connection or relevancy with the matters concerning which relief is sought to be obtained by the prayer of the bill. With reference to the charge in the bill, that the appellees, in order to induce the appellants to purchase the stock referred to, represented to each of them, that the stock was being sold by The Knittel Co. for expansion purposes, and that the proceeds were to be used for increasing the business of the company, but were used for the purpose of paying the old debts of the company, it may be said that this averment of fraud could not be made a proper ground for setting aside the sale of the stock purchased, inasmuch as there is no showing in the bill that the old debts referred to were not bona fide debts; and that the paying of these debts was not a proper or necessary part of the plan for the expansion of the business. The only allegations in the bill concerning fraud which affected, in common, all the purchases of stock are the allegations concerning certain corporate transactions and business of The Knittel Co. with reference to all the stock sold; but these allegations were not properly a part of the bill, inasmuch as The Knittel Co. was not a party to the suit. It distinctly appears from the averments of the bill that the pur-

chases of stock occurred at different times, between different individuals, and were separate, independent and disconnected transactions, and the specific circumstances under which the stock was acquired by the different appellants must necessarily have been different. Nor does it appear that any one of the appellants have any interest in or claim to the shares of stock acquired by any other appellants. For the reasons stated, the bill must be considered multifarious. "Several plaintiffs whose respective demands are distinct and independent of each other may not join in one bill to enforce such demands, even where they are all against the same defendants; and where this is attempted the bill is bad for multifariousness and misjoinder of parties. Several plaintiffs asserting similar rights, but having no common interest, may not generally join in the same bill. Parties whose interests are several may not unite in one action merely to avoid the necessity of bringing separate actions." 21 Cyc. sec. 305. "A bill is multifarious when it seeks to litigate several claims or demands which are in their nature separate and distinct from and have no relation or dependence upon each other." *First Nat. Bank of Lincoln v. Starkey*, 268 Ill. 22; *Ryan v. Trustees of Shawneetown*, 14 Ill. 20; *Crawford-Adsit Co. v. Fordyce*, 100 Ill. App. 362; *Leeds v. Illinois State Medical & Surgical Institute*, 122 Ill. App. 654; *Williams v. Harper*, 127 Ill. App. 625. In support of their contention, counsel for the appellants cite the case of *Miller v. Hale*, 308 Ill. 275, which is the latest expression of the Supreme Court on the subject of multifariousness. A careful consideration of that case, however, results in the conclusion that there is no conflict between that case and the authorities cited above. In the *Miller v. Hale* case, a bill in equity was filed by a number of taxpayers, who sought relief in reference to the disbursements and disposition of certain road funds, which had been

raised by taxation "for the purpose of constructing, widening, maintaining, gravel, rock, macadam or other hard roads." It was alleged in that bill that this road fund had been illegally used, and improperly expended on the roads, and by the several township and county officials, who had the control in various ways of the funds, and the expenditure thereof. The bill prayed for an accounting concerning the parts of the funds which had been illegally or improvidently expended, and for an order of court to direct the proper disposition of the funds in the future. It will be noticed that while the bill involved different township and county officials, they were all connected in some way with the disposition and disbursements of the road fund in question; and while the bill also involved a number of different transactions concerning different roads, they all related to the same general matter in controversy, namely, the illegal and improvident expenditure of these road funds, in which all the complainants in that case had a common interest. The Supreme Court, in its holding that the bill was not multifarious, use this language: "If the grounds be not entirely distinct and disconnected, if they arise out of one transaction or series of transactions forming one course of dealing and all tending to one end, and if one connected story can be told of the whole, the objection of multifariousness does not apply." The inference from the language used is distinct and clear concerning the point here involved, that if the transactions are distinct and disconnected, the objection of multifariousness does apply, and is in harmony with the authorities above cited. A bill that is multifarious renders it subject to a general demurrer. *Whiteside Co. Board Sup'rs. v. Burchell,* 31 Ill. 68.

The only legal basis which can be ascertained as a ground for the relief sought and prayed for are the averments concerning false representations to the ef-

fect that The Knittel Co. was not at the time of the sale of the stock in question licensed to make such sales under the Illinois Securities Law. And in connection with this basis for recovery it should be noted that it clearly appears from the averments of the bill that after the complainants and each of them had acquired the stock, they exchanged it for other stock of another issue, and which issue of stock had apparently been made in conformity with the requirements of the Illinois Securities Law; and that after the complainants had received the latter stock in exchange for the former, it was utilized and appropriated for the purpose of collecting dividends from The Knittel Co. Under these circumstances the complainants were not in position to rescind the contract of sale of the stock sold to them by tendering the other stock which they had accepted in exchange for the former and utilized for their profit. In *Puntenney v. Mantle*, 234 Ill. App. 137, this court held, concerning the matter of tendering back stock sold in violation of the Illinois Securities Act, to avoid the sale, that: "It is one of the basic elements upon which appellee's right rests to recover back the amount paid for the stock under section 37 of the Securities Act, that the purchaser shall make a 'tender to the seller, or in court, of the securities sold to the purchaser.' The appellee's right to recover is purely statutory, hence all the conditions upon which that right is based must be complied with before a recovery can be had; and it is apparent that the stock embraced in the certificate of the Central Oils & Shale Co. was not the same stock which the appellant had sold to the appellee, but stock of a different character; different in amount, and in value, and which the appellee had received and accepted in exchange for the stock which the appellant had sold her; and, also, the stock which she had purchased from another person. The statute clearly requires that the tender to be made should be of the

stock sold and not other stock; or stock which the purchaser may have traded, exchanged or controverted for the stock sold.''

Complainants therefore cannot base the relief prayed for on a tender of the stock which they now hold, inasmuch as it is not the stock which they aver was sold to them by the appellees; and the stock tendered has not the infirmities, which they averred were inherent in the stock which they actually purchased. It is clear from the averments in the bill that the State Bank of Quincy, a party defendant, was in no way connected with the alleged fraudulent sale of stock; nor does it appear by any averment that the bank in any way participated in making any of the sales. The State Bank of Quincy was therefore not a proper party to the bill.

For the reasons stated, we are of the opinion that the court did not err in sustaining the demurrer to the bill, and dismissing it for want of equity. The decree is therefore affirmed.

*Affirmed.*