Harry I. Weisbrod, Appellant, v. E. Lowitz et al., Defendants. Leon M. Woolf et al., Appellees.

Gen. No. 38,264.

Opinion filed November 12, 1935.

CASTLE, WILLIAMS & McCARTHY, of Chicago, for appellant; EMMETT J. McCARTHY and ROBERT R. HANLEY, of Chicago, of counsel.

MAYER, MEYER, AUSTRIAN & PLATT, of Chicago, for appellees; FREDERIC BURNHAM and MILES G. SEELEY, both of Chicago, of counsel.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

Plaintiff brought suit to recover the purchase price of 1,000 shares of Electric Bond and Share Company stock alleged to have been sold by defendants to plaintiff, in violation of the Illinois Securities Law, claiming damages of $35,000; upon trial by the court the judgment was against him, and from this he appeals. It is conceded that the stock in question was not registered or qualified under the provisions of the Illinois Securities Law and not exempt under any of its provisions.

Defendants first say, in defense, that they acted solely as the agents of plaintiff in purchasing the stock and hence are not answerable under the securities law. Defendants are stock brokers, having no stock for sale; they act only as brokers for customers, buying and selling as customers order; they charge a commission on such transactions. Plaintiff had been a customer

of defendants for several years, commencing in 1923; plaintiff would at intervals give orders to defendants by telephone with reference to transactions in stocks; defendants would execute these orders and on the same day would confirm by mail what had been done. Plaintiff, before the particular transaction in question, had bought shares of the Electric Bond and Share Company through defendants and apparently was more or less familiar with the stock.

September 12, 1931, he called Mr. Woolf, one of the defendants, by telephone and inquired as to quotations in the market. Plaintiff says that Woolf mentioned the Electric Bond and Share Company and gave some information about it and said that if it could be bought for $30 a share it was a good buy; plaintiff then said that if it reached this figure to buy 1,000 shares for him. Mr. Woolf testified that he answered plaintiff's inquiries as to quotations on different stocks; that he did not volunteer any information and did not solicit him to buy any shares of stock of the Electric Bond and Share Company.

Woolf made a written memorandum of the order and forwarded it to defendants' New York office by private wire; the New York office transmitted the order to brokers doing business on the floor of the New York Curb Exchange where the purchase of 1,000 shares was made at $30 a share; a report of this purchase was then sent to the defendants at their Chicago office and Woolf sent plaintiff a confirmation of the order showing the purchase price of $30,000 and a charge by defendants of a brokerage commission of $150; no other commission or profit was charged or received. A few days later the defendants received the certificates of stock and they were delivered, pursuant to plaintiff's orders, to certain banks which lent plaintiff money with which to pay for the stock.

We are of the opinion the trial court correctly found that defendants acted solely as the agents of the plaintiff in the transaction and purchased the stock as ordered by him. The sellers of the stock were the undisclosed principals of the New York brokers who made the sale to defendants' brokers on the floor of the New York Curb Exchange. The distinction between a stock dealer who deals in stocks on his own account and a stock broker who acts as his customer's agent has been clearly expressed by Meyer in The Law of Stock Brokers and Stock Exchanges, pages 249 and 250 of the edition of 1931 and page 32 of the supplement of 1933. The author notes that stock dealers usually confirm the transactions to customers by using words like ''confirming sale to you,'' or ''confirming purchase from you,'' whereas stock brokers usually couch their confirmations in language as follows: ''We have this day bought (or sold) for your account and risk.'' The confirmation in the instant case read, ''We have this day bought for your account and risk.''

Cases cited by plaintiff do not negative this position. In *Link, Petter & Co. v. Pollie,* 241 Mich. 356, it was held that the brokers solicited the purchaser to buy. In *Taft v. Otte & Co.,* 274 Ill. App. 280, the opinion merely states the conclusion that the defendants there had acted as sellers. The briefs in that case show that the defendant did not charge the customer a brokerage fee and in its confirmation referred to the transactions as a sale, and also purchased the stock at one price and resold it to the plaintiff at a profit. The facts there are quite different from those in the instant case.

Considering the evidence as having established that defendants were brokers acting for plaintiff in this transaction, are they amenable to the Illinois Securities Law? Plaintiff argues that they are and that they became liable to return the full purchase price of the stock because they knowingly furthered, aided and

assisted in the transaction. Section 37 (1) (Cahill's Ill. Rev. St. ch. 32, ¶ 290) provides as follows:

"(1) Every sale and contract of sale made in violation of any of the provisions of this Act shall be void at the election of the purchaser, and the seller of the securities so sold, the officers and directors of the seller, and each and every solicitor, agent or broker of or for such seller, who shall have knowingly performed any act or in any way furthered such sale, shall be jointly and severally liable, in an action at law or in equity, upon tender to the seller or in court of the securities sold, to the purchaser for the amount paid, the consideration given or the value thereof, together with his reasonable attorney's fees in any action brought for such recovery."

Subsec. 4, sec. 2, defines the term "sale" and subsec. 5 defines "dealer and broker." These definitions are quite lengthy and include every transaction constituting or leading up to a transfer of ownership of securities. But section 37, above quoted, creates rights and imposes liabilities. It clearly is aimed at those who sell stock not qualified.

In every transaction of this nature there are two parties—a buyer and a seller. Plaintiff's argument that the act applies to anyone participating in the transaction, even as the agent for the buyer, ignores any distinction or difference between a buyer and a seller. Clearly the legislature did not intend to penalize the buyer in such a transaction, and it would be illogical and abnormal to penalize the buyer's agent who was acting for his principal.

It should be remembered that in a transaction of this sort there is only one change of ownership, namely, from the seller to the buyer. The New York owners of the stock under consideration did not sell to their brokers but their brokers represented the owners in making the sale. And so plaintiff was not purchasing

from his brokers, who were acting as his agents in the matter. The sale was from the New York owners to the plaintiff through the medium of their respective brokers.

It is not of controlling importance that the defendant Woolf gave as his opinion to plaintiff that the stock was a "good buy" at $30 a share. Plaintiff was seeking information and the broker was giving it as best he could. There was no evidence that plaintiff was asked or solicited to buy.

Subsec. 4, sec. 2, of the Illinois Securities Law was amended in 1933 by adding these words:

"The terms 'sale,' 'offer for sale' or 'sell' shall not include the execution of orders for purchase of securities by a licensed dealer or broker *provided* such dealer or broker acts as agent for the purchaser, has no direct interest in the sale or distribution of the security ordered, receives no commission, profit or other compensation, other than the commissions involved in the purchase and sale of the security, and delivers to the purchaser written confirmation of the order which clearly itemizes his commission, profit, or other compensation."

Plaintiff argues that this changed the law on the principle that the legislature will be presumed by any amendment to change the existing law. The trial court held that this amendment was intended as a clarification, and we are of the opinion that this is a correct interpretation of the amendment. The amendment does not change one word of the section as it previously read. It is merely an additional paragraph. It can hardly be presumed that the legislature intended that the language of the section before this amendment should mean one thing and precisely the same words used by it when this amendment was added should mean something else. We find no case cited which holds that it must be presumed that the legislature in-

tended to change the law when the section retains without qualification or proviso the identical language of the previous enactment, merely adding additional and more detailed provisions. We hold that the trial court correctly found that defendants were the brokers and agents of plaintiff in this transaction and hence not liable.

The securities law requires, upon a rescission by the purchaser, a "tender to the seller or in court of the securities sold." Plaintiff did not make a proper tender. The evidence shows that he made statements that he was ready to make a tender but his stock was then pledged with the First National Bank of Chicago as collateral for a loan made to defray part of the purchase price. There is no evidence that plaintiff could have obtained the stock from the bank in order to make a tender.

A number of cases are cited excusing a tender on the ground that it is shown that the tender would not be accepted, but those cases involve contracts for the purchase of securities. In such cases it has been held that tender is waived where it would be a useless formality. We are of the opinion that a different rule obtains where the penal provisions of a statute are sought to be enforced. It should be noted that tender may be made in open court, which would be pointless if a tender could be excused by a previous refusal. If the defendants were liable they were entitled to receive back the stock sold, and the tender is not a matter of performance by them but of restitution to them.

Upon the trial plaintiff tendered 333⅓ shares of stock which he said he had purchased shortly before the trial for the purpose of making a tender. Plaintiff explained the number of shares by saying some change had been made in the capital structure of the Electric Bond and Share Company whereby three shares each of the old common stock were exchanged for one share

of new common stock. Plaintiff had sold the original 1,000 shares of stock outright. Cases are cited by plaintiff holding that where the seller of unlisted securities has induced the purchaser to exchange them he, the seller, will not be permitted to assert that the plaintiff is unable to return the original shares. That is not the case here. Plaintiff did not exchange the original stock for new stock and there is no evidence that the tendered stock was purchased at the suggestion of defendants. Moreover, after plaintiff had elected to rescind the purchase and after defendants had denied any liability, which meant a refusal to accept any stock from plaintiff, he continued to exercise, for his own profit, all the incidents of ownership by selling it and keeping the proceeds. He thus waived any attempted rescission. *Weber v. Rupp*, 235 Ill. App. 132.

Plaintiff's right to recover is purely statutory, hence all the conditions upon which that right is based must be complied with before a recovery can be had. The statute contemplates that tender must be made of the stock sold unless this is excused by the action of the other party which led to an exchange. *Glen v. Dodson,* 347 Ill. 473.

We see no convincing reason to disagree with the conclusions of the trial court, and its judgment is affirmed.

*Affirmed.*

MATCHETT and O'CONNOR, JJ., concur.